```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF VIRGINIA

                         Alexandria Division
```

| | | |
|---|---|---|
| UNITED STATES of AMERICA | ) | |
| | ) | |
| v. | ) | 1:08cr101 (JCC) |
| | ) | |
| FARES ABULABAN, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant's Motion to Suppress Evidence.  For the following reasons, this Motion will be DENIED.

### I. Background

This case arises out of an Immigration and Customs Enforcement ("ICE") sting operation.  ICE Special Agent Tony Rodriguez ("SA Rodriguez") posed as a Latin American cocaine supplier, with Special Agent Victor Gomez ("SA Gomez") posing as his body guard.  The Agents met with Defendant Fares Abulaban ("Mr. Abulaban") several times, and Mr. Abulaban agreed to line up buyers for the more than 100 kilograms of cocaine SA Rodriguez would provide.  He lined up several purchasers for a sale of cocaine to be held on February 15, 2008 at Club Envy in Morgantown, West Virginia, from which he was to receive a portion of the proceeds.

Mr. Abulaban drove a silver BMW 745 Li (the "BMW") to several of the meetings at which the conspiracy was planned and, along with agents purporting to be co-conspirators, to Club Envy the day before the planned sale.  The Government obtained search warrants for Club Envy, and made arrangements for flatbed tow-trucks to be brought from Northern Virginia to Morgantown to seize vehicles in forfeitures subject to the anticipated takedown.  On February 15, 2008, Mr. Abulaban drove himself, SA Rodriguez, and SA Gomez, along with approximately $40,000 in U.S. currency to be used in the drug transaction, to Club Envy from a hotel in Morgantown in the silver BMW 745 Li.  He parked the car in the parking lot adjacent to the club.  An undercover agent arrived at the club with sham cocaine, at which point an arrest signal was given and the co-conspirators, including Mr. Abulaban, were taken into custody.  Another special agent, Samuel Neglia ("SA Neglia"), was asked to do an inventory search of the silver BMW.  In the process of his search, he discovered a .380 caliber pistol, which gave rise to a allegations in Counts One and Three of the Indictment that Defendant Abulaban unlawfully possessed a firearm.

On April 22, 2008, Defendant Abulaban filed a Motion to Suppress Evidence, seeking to have the evidence obtained as a result of the search of the BMW - namely, the .380 caliber pistol - suppressed.  This Motion is currently before the Court.

## II. Analysis

Defendant Abulaban argues that the search of the BMW he drove to Club Envy on February 15, 2008, was warrantless and conducted without a justifiable exception to the warrant requirement. Therefore, the pistol found during the search should be excluded. The Government argues that officers had probable cause to search the vehicle as it was an instrumentality of the crime and, as a conveyance used in furtherance of the conspiracy, was subject to forfeiture and therefore properly seized.

### A) Vehicle Exception

Defendant first argues that the search of the car was not authorized by a warrant, making the search and seizure unlawful. The Government argues that no warrant was required. The Supreme Court has held that, although "[t]he Fourth Amendment generally requires police to secure a warrant before conducting a search . . . there is an exception to this requirement for searches of vehicles." *Maryland v. Dyson*, 527 U.S. 465, 466-467 (U.S. 1999); citing *California v. Carney*, 471 U.S. 386, 390-391 (1985); *Carroll v. United States*, 267 U.S. 132, 153 (1925). The Court re-emphasized that "in cases where there was probable cause to search a vehicle 'a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained.'" *Id.* (quoting United

States v. Ross, 456 U.S. 798, 809 (1982)).

In *Dickey-Bey,* the Fourth Circuit considered the validity of an automobile search in a drug conspiracy case, concluding that the officers had independent probable cause to search the car because it was an instrumentality of the crime. *United States v. Dickey-Bey*, 393 F.3d 449, 456-57 (4th Cir. 2004). In that case, the defendant drove the car to the place where he picked up a package containing cocaine, with "probable cause to believe that Mr. Dickey-Bey was going to put the box in his vehicle and that he was going to get in that vehicle." *Id.* at 457. The Government argues that the BMW was similarly an instrumentality of the drug conspiracy.

Defendant distinguishes the facts before the Court from the cases allowing warrantless searches of cars that are instrumentalities of crime. He argues that, rather than probable cause to believe the car was used in the crime, "there was no reason to believe that there was anything in that car." Def.'s Reply to Pros.'s Response to Def.'s Mot. to Suppress at 4. There was no informant who told officers that there were drugs in the car, as in *Maryland,* 527 U.S. at 465, and in *United States v. Ross*, 456 US 798 (1982). However, like the car in *Dickey-Bey,* the BMW was used to transport Defendant to the place where drugs were to be procured, with the intention that the cocaine would be removed from the location in the vehicle. In addition, the car

-4-

was also used for transportation to meetings where the conspiracy was planned, and transported Defendant to the purchase site, along with those he supposed to be co-conspirators and the money to be used to purchase the drugs.  There is also reason to believe that Defendant intended to use the BMW to transport the cocaine and further proceeds away from the transaction at its conclusion.  The Court concludes that the officers had probable cause to search the BMW, as it was an instrumentality of the drug conspiracy and thereby falls within the vehicle exception to the warrant requirement.

### B) Forfeiture

The Government also argues that the search was proper because the BMW was subject to forfeiture as a conveyance used to facilitate a drug trafficking crime.  The relevant statute provides that "[a]ll conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property," including controlled substances, "shall be subject to forfeiture to the United States and no property right shall exist in them," and provides that "[a]ny property subject to forfeiture to the United States under this section may be seized by the Attorney General in the manner set forth in section 981(b) of title 18, United States Code."  21 USCS §§ 881(a), (b).  Section 981(b) requires a

warrant for these seizures except in cases where "there is probable cause to believe that the property is subject to forfeiture and (i) the seizure is made pursuant to a lawful arrest or search; or (ii) another exception to the Fourth Amendment warrant requirement would apply." 18 USCS § 981(b)(2)(B).

The Government argues that the BMW, as a vehicle used and intended for use to transport and facilitate the transportation, sale, receipt and possession of cocaine, is subject to seizure pursuant to 21 USCS §§ 881(a). Although it recognizes that there was no warrant for seizure of this particular vehicle, the Government argues that the seizure was both pursuant to the lawful arrest of the car's driver and under the Fourth Amendment vehicle exception discussed above.

Defendant cites a First Circuit case, *United States v. One 1972 Chevrolet Corvette*, 625 F.2d 1026, 1028 (1st Cir. 1980), in support of his argument that the BMW was improperly searched, as "[i]ntent to use a vehicle to transfer proceeds does not, *per se*, subject the vehicle to forfeiture" under 21 U.S.C. § 981. However, the BMW in this case was more extensively involved in the transaction than that Corvette. In that case, "[t]he only relationship the vehicle had with the [drug] transaction . . . was to transport [the defendant] to a meeting at which he intended to receive the repayment of his 'front money.'" *Id.* at

1029. The BMW, on the other hand, was used to transport Defendant to and from meetings to plan the conspiracy, to transport Defendant and two purported co-conspirators to the sight of the planned transaction, and to transport the money intended to be used for the cocaine purchase, as well as being intended to transport Defendant away from the planned drug transaction with cocaine and any payment.

The Court is of the opinion that this case bears more similarity to that of another decided in the Fourth Circuit, *United States v. 1966 Beechcraft Aircraft Model King Air A90*, 777 F.2d 947 (4th Cir. 1985). The Court held that "the use of an airplane or other vehicle or vessel in a drug transaction, either to transport controlled substances or to transport conspirators to an exchange site, establishes a 'substantial connection' between the conveyance and the criminal activity sufficient to justify an order of forfeiture." *Id.* at 953. As the BMW was unquestionably used to transport conspirators to an exchange site, and because it was intended for transport of controlled substances, the Court finds that there was a substantial nexus to justify forfeiture.

The Supreme Court has also allowed warrantless seizures of automobiles related to drug crimes. It explicitly overruled a decision holding that "there is a vast difference between permitting the immediate search of a movable automobile based on

actual knowledge that it then contains contraband and the discretionary seizure of a citizen's automobile based upon a belief that it may have been used at some time in the past to assist in illegal activity." *Florida v. White*, 526 U.S. 559, 564 (U.S. 1999)(quoting 710 So. 2d at 953). The Court reasoned that, even in a case where "the police lacked probable cause to believe that respondent's car contained contraband, they certainly had probable cause to believe that the vehicle itself was contraband under Florida law." *Id.* at 565. The Florida law in question "authorized the warrantless seizure of both goods subject to duties and the ships upon which those goods were concealed," similar to the seizure provisions of 21 USCS § 881(a). The automobile in *Florida* was seized from a parking lot, as was the car in this case. 526 U.S. at 566. The Supreme Court "conclude[d] that the Fourth Amendment did not require a warrant to seize respondent's automobile in these circumstances." *Id.*

This Court finds that the officers had probable cause to believe that the BMW was subject to forfeiture and that the vehicle exception to the Fourth Amendment warrant requirement applies. Therefore, no warrant was required for SA Neglia to search the automobile, and the evidence obtained as a result of the search need not be suppressed.

### III. Conclusion

For the forgoing reasons, Defendant's Motion to

-8-

Suppress will be DENIED.

An appropriate Order will issue.

June 6, 2008                             /s/
Alexandria, Virginia               James C. Cacheris
                                UNITED STATES DISTRICT COURT JUDGE